# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JAMES C. HOCKETT,

      Plaintiff,

      vs.                                 No.09-CV-0920 WJ/LFG

BLOOD SYSTEMS, INC.,
UNITED BLOOD SERVICES, and
DOUGLAS SCHUTT,

      Defendants

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES UNDER 28 U.S.C. § 1447(c)

THIS MATTER comes before the Court upon Plaintiff's Motion for Remand to State Court and Attorneys' Fees and Costs Under 28 U.S.C. § 1447, filed October 21, 2009 **(Doc. 8)**. Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is not well-taken and will be denied.

### Background

This is an employment case that arises out of Plaintiff's former employment relationship with Defendant United Blood Services ("UBS").[1]  On August 24, 2009, Plaintiff filed a complaint for civil rights violations and common law torts in the Second Judicial District Court in and for the County of Bernalillo, State of New Mexico.  Defendants removed the case to federal court on September 22, 2009.

According to the parties' contentions in the Joint Status Report and Provisional

---

[1] According to the Notice of Removal, UBS is comprised of Defendant Blood Systems, Inc., d/b/a United Blood Services.

Discovery Plan (Doc. 9), Plaintiff worked for UBS, a non-profit community blood center, as a Hospital Services Technician II, and was responsible for receiving orders for blood and blood products, properly preparing the products for delivery, and delivering the products to customers. In this lawsuit, Plaintiff alleges that Defendants discriminated against him on the basis of his sexual orientation and then unlawfully retaliated against him by terminating him from his employment at Blood Systems, Inc., when he complained of the discrimination. Plaintiff alleges that Defendants' actions violated the New Mexico Human Rights Act and New Mexico common law. Defendants' position is that UBS terminated Plaintiff on August 19, 2008 for legitimate business reasons, based on policy infractions and a serious shipping error that could have resulted in the endangerment of patients waiting to receive the blood products.

## Discussion

In this motion, Plaintiff seeks to remand the case to state court. Plaintiff contends that this case does not belong in federal court because the Complaint makes no allegation of federal statutory violations and presents no federal question or any issue governed by federal law. Plaintiff further contends that this case cannot be removed based on diversity jurisdiction, because he has asserted claims against his former supervisor, Douglas Schutt, who is a citizen and resident of New Mexico. Plaintiff also requests an Order pursuant to 28 U.S.C. § 1447(c) for payment of costs and expenses, including attorney fees, incurred as a result of the removal.

Defendants base the removal on diversity jurisdiction, claiming that Plaintiff fraudulently joined Mr. Schutt, who is a nondiverse defendant and that in the absence of the fraudulently joined claims against Mr. Schutt, diversity jurisdiction exists under 28 U.S.C. § 1332. The Court notes, as an initial matter, that there does not appear to be a dispute regarding diversity based on the citizenship of UBS. Plaintiff states in the Complaint that UBS is located in Albuquerque,

New Mexico and operates under the name Blood Services, Inc.; that Blood Services, Inc. is the parent company to UBS, and that UBS is one of Blood Service, Inc.'s New Mexico operations. Compl. ¶ 3.  However, in the Notice of Removal, Defendants state that UBS is an Arizona non-profit corporation with its principal place of business in Scottsdale, Arizona.  Ex. C to Notice of Removal.  Plaintiff does not appear to dispute the fact or supporting affidavit that UBS is a nondiverse Defendant, thus leaving Defendant Schutt as the only nondiverse Defendant.[2]

Defendants state in the Notice of Removal that Plaintiff's claims against Mr. Schutt ("Schutt") brought under the New Mexico Human Rights Act ("NMHRA") are fraudulently joined because Plaintiff failed to exhaust his administrative remedies against that individual. Defendants further contend that Plaintiff fails to allege any actions that could state a cause of action for intentional infliction of emotional distress ("IIED") against Schutt, and that therefore such claims are also fraudulently joined.

## I.    Legal Standard

Under 28 U.S.C. §Section 1331(a), United States District Courts have original jurisdiction of every civil action that "arises under the Constitution, the law, or treaties of the United States."  A claim arises under federal law within § 1331 if it is apparent from the face of the complaint either that (1) a federal law creates the plaintiff's cause of action; or (2) if a state law creates the cause of action, a federal law that creates a cause of action is a necessary element of the plaintiff's claim. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986). The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a

---

[2]  For purposes of federal diversity, a corporation is deemed to be a citizen of a state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).

3

federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar v. Williams*, 482 U.S. 386 (1987).

Federal court jurisdiction is to be strictly construed. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U. S. 100, 108 (1941). Where a case was originally filed in state district court, a presumption exists against removal jurisdiction, *Laughlin v. Kmart Corp.*, 50 F. 3d 871, 873 (10th Cir. 1995), and the court must resolve all doubts against removal, *Martin v. Franklin Capital Corp.*, 251 F. 3d 1284, 1290 (10th Cir. 2001); *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F. 2d 331, 333 (10th Cir. 1982). The removing party bears the burden of establishing that removal was properly accomplished.  *Martin*, 251 F. 3d at 1290.

**II.**   **Allegations in the Complaint**

An analysis to determine whether removal – and thus federal jurisdiction is proper – rests on the allegations in the complaint.

A.   <u>Letters Complaining of Discrimination</u>

Plaintiff states that he submitted "numerous grievances" regarding discriminatory treatment by his supervisor Defendant Schutt starting in 2003, when he was disciplined more harshly than coworkers for a similar, minor error by being suspended without pay.  Compl., ¶ 8. Plaintiff alleges that Schutt's conduct toward him was based on Plaintiff's sexual orientation, and that UBS ignored Plaintiff's complaint. However, Plaintiff offers no specifics about the error or the various grievances until the year 2007.

In January of 2007, Plaintiff wrote a letter to Elizabeth Waltman, Executive Director of UBS, complaining of Schutt's unfair treatment.  He specifically complained that Schutt excluded him from promotion and gave him lukewarm annual reviews.  Ms. Waltman shared Plaintiff's letter with Schutt, which Plaintiff states led to greater tension between him and Schutt.  ¶ 9.

4

B.      Grievances Submitted in 2008

        In March of 2008, Plaintiff was given two written reprimands, on March 11 and March

21 for acts which he contends he did not commit. Plaintiff offers no specifics on the basis for the

reprimands.  On March 22, Plaintiff submitted a Step Level I grievance, disputing the written

reprimands and claiming that Schutt's actions were based on Plaintiff's sexual orientation.  ¶ 10.

Ms. Waltman responded to the grievance on April 8, 2008, concluding that Schutt's actions were

based on Plaintiff's performance, and that Schutt was unaware of Plaintiff's sexual orientation. ¶

11.

        On April 11, 2008, Plaintiff submitted a Step Level 2 grievance to Corrine Butts, Chief

Executive Officer ("CEO") of UBS, appealing the denial of his request to remove the March

2008 reprimands from his file, and reiterating his belief that Schutt discriminated against him

based on his sexual orientation.  Compl, ¶12.  UBS responded to this grievance on June 2, 2008,

finding no evidence to substantiate Plaintiff's complaints of discrimination and retaliation, and

again denied Plaintiff's request to remove the written reprimands from his personnel file.

Compl., ¶ 15.

        On May 1, 2008, Plaintiff sent a letter to Ms. Butts informing her that Schutt had

eavesdropped on a teleconference call between Plaintiff and Ms. Butts and which took place in

Plaintiff's office.  Plaintiff described how, on leaving his office following the call, he found

Schutt standing immediately outside his office door.  Compl., ¶ 14.

        On June 15, 2008, Plaintiff submitted a Step Level 3 Grievance on June 15, 2008 to

Daniel Conner, President and CEO of Blood Systems, Inc.[3]  Compl., ¶ 16.  UBS responded to

---

        [3]  The Complaint implies that Blood Systems, Inc. and United Blood Services are distinct
entities, while the Notice of Removal explains that they are one entity, with Defendant Blood

this grievance on July 14, 2008, finding no merit to the complaints and again denied Plaintiff's requests to remove the previous written reprimands. Compl., ¶19.  The response also stated that Plaintiff would not be receiving a pay increase which Plaintiff alleges had been previously promised, blaming the change on "administrative error.  Compl., ¶ 20.  Plaintiff asserts that UBS notified him in April 2008 by letter that he was eligible for, and would receive a pay increase effective March 30, 2008. Plaintiff contends that the denial of a previously promised pay increase was due to the March 2008 reprimands, even though the increase was supposed to reflect Plaintiff's work for 2007, and not for 2008 when the reprimands occurred.

C.      Blood Plasma Incident

On June 17, 2008, an incident occurred at UBS involving Plaintiff and a supervisor, James Salas.  Compl., ¶ 17.  Twenty-seven units of blood product were destroyed due to being left unrefrigerated too long. Plaintiff contends that he was not responsible for the error.  On June 26, 2008, Plaintiff received a warning in connection with the June 17th incident, based on "lack of communication" and failure to exhibit teamwork – which would have prevented the units of blood product from being destroyed.

D.      Termination

On August 19, 2008, Plaintiff was terminated for "willful violations of [standard operating procedure]" and customer service standards.  The termination letter referenced the March 2008 written warnings, the June 26 warning concerning the destruction of the blood plasma units, and an incident about an unrecorded unit of plasma which was shipped to the United Kingdom.  This last incident involved an alleged violation of standard operating

Systems, Inc. d/b/a United Blood Services.  *See* n.1, supra.

procedure in the way a blood product shipment was packed.[4]  Plaintiff denies that the unrecorded

unit of plasma was part of a shipment he packed or that he violated SOP.

Counts I and II of the Complaint alleges unlawful discrimination on the basis of sexual

orientation under the NMHRA, and unlawful retaliation in violation of the NMHRA.  Plaintiff

asserts both of these claims against both UBS and Defendant Schutt, claiming that UBS knew of

the disparate treatment taken by Schutt against Plaintiff, but took no action to stop it.  Count III

is asserted against only Defendant Schutt, stating that Schutt's conduct constitute the kind of

extreme and outrageous conduct which states a claim for IIED.

## IV.     Diversity Jurisdiction

Plaintiff claims that diversity jurisdiction does not exist because he has alleged claims

against his former supervisor, who is a New Mexico citizen and resident.  Defendants claim that

any claims against Schutt have been fraudulently joined. Specifically, Defendants contend that

Plaintiff cannot proceed on a claim under the NMHRA against Schutt because he did not

administratively exhaust that claim, and further that Plaintiff's allegations are insufficient to

make out a viable claim of IIED against Schutt.

A.     Non-Exhaustion of the NMHRA Claim

In his motion, Plaintiff does not challenge Defendants' argument that Plaintiff has not

exhausted the NMHRA claims against Defendant Schutt.  Instead, Plaintiff states only that the

Court need not address the issue because remand can be granted on another basis.  Mot. at 9, n.1.

In his reply, Plaintiff denies that he concedes the exhaustion issue, arguing that New Mexico

cases which hold that a plaintiff must exhaust NMHRA claims against individual defendants do

---

[4]  Plaintiff offers no date for when this incident occurred, or any other details regarding
this incident.

not apply to him.  First, he notes that he was acting pro se when filed the charge of
discrimination, and second, he states that no state court in New Mexico has addressed the issue.
On the contrary, New Mexico courts have addressed the issue sufficiently to know which way
the wind is blowing: a plaintiff must exhaust his or her administrative remedies against a party
before bringing an action in district court against that individual under the NMHRA.

The New Mexico Supreme Court has acknowledged the possibility of individual liability
for discrimination claims. *Sonntag v. Shaw*,130 N.M. 238, 242-43 (2001) (acknowledging that
there is generally no personal liability under Title VII, but rejecting the proposition "that there
can exist no individual liability under the NMHRA"); *cf. Luboyeski v. Hill*, 117 N.M. 380, 382
(1994) (affirming the dismissal of individual defendants because the plaintiff failed to exhaust
administrative remedies against them).

In *Sonntag*, a defendant relied on Title VII case law to argue that the owner of a
corporation could not be sued as an individual under the NMHRA. *Id*.  Although the court held
that the defendant could not be held personally liable, given that the plaintiff had failed to
exhaust administrative remedies, it declined to close the door on individual liability under the
NMHRA.  *Id*.  As New Mexico courts have noted, the potential for individual liability for
discrimination claims is rooted in the language of the NMHRA itself, which defines "employer"
as "any person employing four or more persons and any person acting for an employer." NMSA
1978 § 28-1-2B.  The statute also forbids "any person" from supporting a discriminatory
practice.  *Mitchell-Carr v. McLendon*, 127 N.M. 282 (1999) (citing *Luboyeski);* NMSA 1978, §
28-1-2(A) (1993) (including within its definition of "person" for purposes of the NMHRA, "one
or more individuals."); *see also Duprey v. Twelfth Judicial Dist. Court*, unpubl. opin., 2009 WL
2482170 (D.N.M.,2009) (noting that the New Mexico Supreme Court of New Mexico has

"rejected the proposition that there can exist no individual liability under the NMHRA," relying on *Sonntag* and *Luboyeski*).

The Court finds that Defendants' contention of non-exhaustion of the NMHRA claim is well-supported by both the evidence and the relevant case law.[5]  Defendants' Exhibit D, attached to the Notice of Removal, indicates that Plaintiff's charge of discrimination with the Human Rights Division in the New Mexico Department of Labor names only UBS as the respondent.

In short, the only inquiry here is whether Schutt was fraudulently joined with regard to the IIED claim. If Plaintiff can maintain a viable IIED claim against Schutt, then this case cannot be removed to federal court because Mr. Schutt is a nondiverse defendant.  If, however, there is merit to Defendants' argument that Plaintiff fails to allege any actions that could state a cause of action for IIED against Mr. Schutt, then the case is removable and would proceed against UBS in this court.

B.   Fraudulent Joinder and IIED Claim Against Defendant Schutt

1.   *Legal Standard for Fraudulent Joinder*

As the removing party in this case, Defendants bear the burden of establishing that removal was properly accomplished.  *Martin v. Franklin Capital Corp.*, 251 F. 3d 1284, 1290 (10th Cir. 2001).  The party asserting the right to removal based upon fraudulent joinder bears an even heavier burden. To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty.  *Couch v. Astec*

---

[5] Rule 12(b)(1) of the Federal Rules of Civil Procedure empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.R.Civ.P. 12(b)(1). When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir.1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995).

*Indus., Inc*., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999) (citing *McLeod v. Cities Service Gas Co.*, 233 F. 2d 242, 246 (10th Cir. 1956)). The plaintiff need not ultimately succeed on a claim against the resident defendant to defeat removal jurisdiction; rather, the plaintiff must demonstrate only the possibility that a state court would find that the complaint states a valid cause of action.  *Id.* at 1147;  *Montano v. Allstate Indemnity*, unpubl. opin., 2000 WL 525592 (10th Cir. 2000) (to prove allegations of fraudulent joinder, the removing parties must show that there is no possibility that a plaintiff would be able to establish a cause of action against the joined party in state court). In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party, which in this case is the Plaintiff.  *Montano,* 2000 WL 525592, 1.

In order to prove its allegation of fraudulent joinder, Defendants must demonstrate that either (1) no possibility exists of establishing a claim against Mr. Schutt, or (2) Mr. Schutt has been haled into state court based upon fraudulently pled jurisdictional facts.  *See Pacheco de Perez v. AT& T Co.*, 139 F. 3d 1368, 1381 (11th Cir. 1998) (discussing elements and proof of fraudulent joinder); *Pampillonia v. RJR Nabisco, Inc*., 138 F. 3d 459, 461 (2d Cir. 1998) (same); *Gottlieb v. Westin Hotel Co.*, 990 F. 2d 323, 327 (7th Cir. 1993) (same).

In order to establish a claim for IIED, a plaintiff must show that (1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the plaintiff's mental distress. *Trujillo v. N. Rio Arriba Elec. Coop., Inc*., 131 N.M. 607, 616 (2001). Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable

in a civilized society." *Id*.  As a threshold matter, a trial court must determine whether, as a matter of law, the conduct at issue may reasonably be regarded as sufficiently extreme and outrageous as to permit recovery under the tort of IIED. *Id*. at 343.

The facts alleged in this case do not come close to asserting an IIED claim.  The allegations in other cases which support this type of claim are obviously egregious, and the factual framework of such cases commonly regard sexual harassment cases.[6]

---

[6] For example, in *Coates v. Wal-Mart Stores, Inc.*,127 N.M. 47 (N.M.,1999), the New Mexico Supreme Court also held that a reasonable jury could find that Wal-Mart, through its supervisor and management, intentionally allowed the sexual harassment to plaintiff with utter indifference to the consequences.  *Id*. In *Coates*, two former employees brought IIED claims against Wal-Mart for sexual harassment by a supervisor. The plaintiffs presented evidence that a supervisor, Mr. Alire, had physically and verbally sexually harassed them. Mr. Alire made lewd and vulgar suggestions to the plaintiffs on more than one occasion and made an obscene gesture to one of the plaintiffs on at least one occasion. One incident involved Mr. Alire grabbing one of the plaintiff's breasts from behind while she was operating a forklift. On another occasion, Mr. Alire pulled open the other plaintiff's blouse to look at her breasts.  The plaintiffs had complained to management of the harassment on several occasions to no avail. Also, high-leval supervisors had witnessed the harassment and had done nothing to intervene. *Id*. The case went to trial, the IIED claims were submitted to a jury, and a verdict was entered in favor of the plaintiffs. *Coates*, Wal-Mart appealed the jury verdict arguing that there was insufficient evidence to support the verdict. *Id*. at 57. In affirming the verdict, the New Mexico Supreme Court found that Mr. Alire's conduct was outrageous.

In *Stock v. Grantham*,125 N.M. 564, 964 P.2d 125 (N.M.App.,1998), the plaintiff worked as a nanny for the Granthams.  During the first of plaintiff's four abdominal operations, Mr. Grantham visited plaintiff at her hospital bed. After asking if she would need to wear the colostomy bag outside of her clothes, Mr. Grantham fired plaintiff and then terminated their contractual relationship. The New Mexico Court of Appeals reversed the dismissal of plaintiff's IIED claim, finding that more specific information was needed concerning plaintiff's condition at the time and the precise conversation of Mr. Grantham's tone of voice.

In *Mart v. Dr. Pepper Co*., 923 F.Supp. 1380 (D. Kan. 1996), the court found that plaintiff's evidence of sexual harassment did not show sufficiently outrageous conduct to survive summary judgment on her claim under the Kansas tort of outrage. In that case, the plaintiff was an account sales manager for Dr. Pepper. She had regular ongoing business contacts with Mr. Terrell, a manager for a bottling facility owned by Pepsi. According to the plaintiff, Mr. Terrell made several inappropriate comments with sexual connotations such as referring to his secretary as a "bitch," stating that he would like to give plaintiff a "big, sloppy, wet kiss," referring to

In this case, Plaintiff makes no allegations of obviously offensive conduct or abusive language.  The complained-of conduct consists of reprimands issued in March 2008, which Plaintiff contends were issued because of his sexual orientation and not for his performance.  As mentioned previously, Plaintiff gives no information on either the number or nature of the March 2008 reprimands.  Schutt also apparently had a hand in reprimanding Plaintiff in June of 2008 related to the destruction of blood plasma when it was not kept refrigerated, and accuses Schutt of giving him "lukewarm" reviews and not giving him a promotion.  Finally, Plaintiff was terminated for policy violations which he contends he did not commit.

The distress caused by a defendant's actions in an IIED claim must be of such a character that no reasonable person could be expected to endure it. *Trujillo*, 131 N.M. at 617.  In this case, even viewing the allegations in Plaintiff's favor, the scenario depicted by those allegations can hardly be considered "extreme and beyond the bounds of decency."  While Plaintiff might

---

another female as a "cunt," and stating that his secretary wore "fuck me pumps." He also used vulgar language and talked about problems with his teenage daughter stating that he wished girls were more like men. On one occasion, Mr. Terrell yelled at plaintiff saying, "You're not going to fuck me and fuck me, get on top of me, get me pregnant and leave me" when he became angry about getting limited funding for marketing a certain product. The district judge granted the defendants' motion for summary judgment on plaintiff's claim under the Kansas tort of outrage. *Id*. at 1389. The Court noted a reluctance under Kansas law to permit a claim for outrage relating to sexual harassment in the employment setting. *Id*. The Court then found that Mr. Terrell's conduct, while offensive, was not extreme and beyond the bounds of decency. *Id*.

In *Stieber v. Journal Pub. Co*., 120 N.M. 270, 901 P.2d 201 (N.M.App.,1995), the New Mexico Court of Appeals affirmed summary judgment for the employer in finding that the newspaper did not intentionally inflict emotional distress upon the plaintiff/reporter when, after assigning her to position as special projects reporter, the newpaper gave her so many daily beat stories that she was unable to concentrate on special projects).

The Court provides the above examples to put Plaintiff's allegations in the instant case in proper context.  The assertions of disparate discipline and subsequent termination, based on what Plaintiff was told to be inadequate job performance, pales in comparison to the type of allegations a court would seriously consider supportive of an IIED claim.

consider Schutt's conduct to be upsetting to him, it does not rise to the threshold level for a viable IIED claim. Moreover, the New Mexico Supreme Court has recognized that "only in extreme circumstances" can the act of firing an employee support a claim of intentional infliction of emotional distress," concluding that "[b]eing fired is a common occurrence that rarely rises to the level of being 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community." *Trujillo*, 131 N.M. at 617 (citing *Stock v. Grantham*, 125 N.M. 564, 964 P.2d 125 (Ct.App. 1998)).[7]

Plaintiff argues that Defendants cannot show that he has no chance of proving a state law IIED claim against Defendant Schutt.  In support of his position that remand is appropriate, Plaintiff points to no less than fifteen cases, mostly from federal district courts within the Tenth Circuit.  Doc. 18 at 4.   However, none of these cases involve IIED claims, much less IIED claims within an employment context.  They fall into categories of either insurance cases, contract cases or products liability cases, with few exceptions.  As a result, despite the outcome of those courts' decisions favoring remand, those cases do not support Plaintiff's position on the fraudulent joinder question, and are not helpful to the Court. [8]

_____

[7] The plaintiff in *Trujillo* alleged that his employer had failed to accommodate his serious medical condition.  The employer contended that it fired the plaintiff for inadequate job performance.  The *Trujillo* court concluded that the employer's actions in firing plaintiff were not extreme and outrageous and thus did not satisfy the threshold requirement for intentional infliction of emotional distress.  131 N.M. at 617, 41 P.3d at 343.

[8] The court has reviewed all these cases on which Plaintiff relies to argue that the weight of court decisions favor remand in fraudulent joinder matters.  What follows is a short description of all of these cases which makes it clear that these cases are largely irrelevant to the particular fraudulent joinder issue in the instant case:

*Montano v. Allstate Indemnity*, unpubl. opin., 2000 WL 525592, 1 (10th Cir. 2000), which is cited as a seminal case on fraudulent joinder for the Tenth Circuit, is an insurance coverage case.  Plaintiffs sued the insurer and its agent, whom plaintiffs alleged was responsible for any failure to increase uninsured motorist coverage to $100,000 per policy before the

accident.  The court found that plaintiffs did not fraudulently join the agent as a defendant pursuant to state law governing the personal liability of insurance agents.

*Allen v. Allstate Ins. Co*., unpubl. opin., 2008 WL 6045497 (D.N.M. 2008) found that there was a possible viable claim of interference with contractual relations against the agent, who was possibly involved with advising the insured of insured's rights to settle and litigate.

*Baeza v. Tibbetts*, unpubl. opin., 2006 WL 2863486, 1 (D.N.M.,2006) was a products liability case involving defective cardiac medical devices. The court found that the sales representative was not necessarily insulated from a strict liability action even where he did not directly market the device, if he played an integral role in the marketing enterprise of the allegedly defective product and participated in the profits.  The court concluded that the sales representative was not fraudulently joined, and the case was remanded to state court.

*Wyckoff v. Boston Scientific Corporation,* unpubl. opin., 2005 WL 4001448 (D.N.M.,2005) is another strict products liability case involving a medical device where the hospital was joined.  The court granted remand and found that the hospital was not fraudulently joined because it was not clear whether the allegedly defective device was ordered by a physician or the hospital, and thus there was a "good faith basis" for asserting that the hospital was liable.

In *Spataro v. Depuy Orthopaedics, Inc*., unpubl. opin., 2009 WL 382617 (D.N.M.), the court decided there could be a claim against a sales representative in a strict liability action, and thus remanded the case to state court.

*Morris v. Allstate Corp*., unpubl. opin., 2009 WL 1873805, 4 (D.Kan. 2009) is an insurance case.  The court found that the citizenship of the insurance agent could not be disregarded in a case involving misrepresentation and fraud and remanded the case to state court.

In *Myers v. Healthmarkets, Inc*., unpubl. opin., 2009 WL 1292828, 5 -6  (D.Colo., 2009), the nondiverse defendant was alleged to have trained sales agents to falsely represent the benefits of HealthMarkets insurance policies, and consequently to have been a part of the fraudulent scheme to sell "junk" insurance policies.  The court found that the facts suggested that the state court could find the nondiverse defendant liable for his involvement in an allegedly fraudulent scheme, notwithstanding his lack of direct contact with Plaintiffs – and remanded the case.

*Redhat v. General Binding Corp*., unpubl. opin., 2008 WL 1944711, 1 (W.D.Okla..2008) is a personal injury / products liability case in which a toddler severely injured his hand in the shredder located in a hospital's emergency room.  The court found that the hospital was not fraudulently joined based on the possibility of a claim under the state tort claims act.

In *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc*., 416 F.Supp.2d 1081 (D.Kan.,2006), the question was whether plaintiff had fraudulently joined the nondiverse corporation that operated a nuclear power plant in case alleging lleging breach of contract, promissory estoppel, and various tort claim.  The court concluded that the corporation could possibly recover on its claims against contractors, and that remand to state court was required because plaintiff could possibly recover under a breach of contract or promissory estoppel theory against contractors that were to install digital control system at the plant

*Van Hoecke Contracting, Inc. v. Lennox Industries, Inc*., unpubl. opin., 2005 WL 2575271 (D.Kan.,2005) involved bidding on a public construction contract. The court found that

14

Plaintiff also contends that the Court cannot determine at this point whether the complaint

---

it was precluded from definitely concluding that plaintiff's claim against the nondiverse defendant was unfeasible because the case law was undeveloped on the issue of whether defendant could be liable under the Kansas restraint of trade act.  The case was remanded to state court to determine the bounds of that uncertain area of Kansas law.

In *Schnepf v. Kansas Gas Service Co.*, unpubl. opin.,  2005 WL 628023, 3 (D.Kan. 2005), plaintiffs sued defendants based on theories of negligence, negligence per se, and strict liability after a gas explosion and fire resulted in a fatal injury. The court found that, although the complaint was inartfully pleaded, it was likely that plaintiffs could amend the petition to state an apparent manufacturer cause of action against the nondiverse defendant.  The case was remanded to state court, finding no fraudulent joinder.

In *City of Neodesha, Kansas v. BP Corporation North America Inc.*, unpubl. opin., 355 F.Supp.2d 1182 (D.Kan.,2005), the court found that the citizenship of an employee of the independent contractor for a non-resident oil company could not be disregarded, and the case was remanded.  The plaintiff in this case sought one billion dollars in damages, alleging various state claims arising from a dispute over the responsibility for contamination in the soils and groundwater beneath the city.  The nondiverse defendant clearly had some involvement in the events giving gave rise to the case, particularly that he was responsible for certain alleged misrepresentations about a clean-up program.

In *Cooper v. Zimmer Holdings, Inc.*, unpubl. opin., 320 F.Supp.2d 1154 (D.Kan.,2004), a recipient of orthopedic implant and his wife filed a state court action against a manufacturer and distributor of the implant alleging strict liability, negligence, breach of implied and express warranties, loss of consortium, and violation of the Kansas Consumer Protection Act.  The court found that, although the state consumer protection act which limited liability to product sellers, nevertheless the nondiverse distributor was not fraudulently joined because the state court find the distributor to be a supplier under the act.

The plaintiffs in *Samara v. Southwestern Bell Yellow Pages, Inc.*, unpubl. opin.,  2006 WL 1805946, 1 (W.D.Okla.,2006) owned a bail bonds company and asserted claims of breach of contract, invasion of privacy and gross negligence based on a contract for advertisement in the yellow pages.  Plaintiffs alleged that defendant home and printed their unlisted phone number and home addresses, even though plaintiffs were assured by the nondiverse agent that personal information would not be disclosed in the yellow pages. Plaintiffs claimed that dangerous criminal clients called their home and strangers were appearing at their front door, and that they were concerned for their personal safety.  The nondiverse defendant contended that he dealt with the plaintiffs solely in his capacity as an employee and agent of the company within the scope of his agency authority.  However, the court noted that in situations involving the possibility of physical harm to another person, an employee may be held liable to a third party.  As a result, the court could not conclude there was no possibility the plaintiffs stated a claim against the nondiverse defendant, found that joinder was not fraudulent, and it remanded the case to state court.

15

satisfies a claim for IIED because such an evaluation cannot be made at the pleadings stage.

Plaintiff points to a few New Mexico cases involving IIED claims which were addressed post-

trial looking back at summary judgment decisions (Reply at 6-8), but he does not offer any rule or

case law to suggest that the Court is prohibited from reviewing Plaintiff's complaint, viewing the

facts favorably to him, in order to determine whether federal jurisdiction is proper.  Such a

proposal is decidedly contrary to established jurisprudence.  *See, e.g., Laughlin v. Kmart Corp*.,

50 F.3d 871, 873 (10th Cir. 1995) (court must address the threshold issue of subject matter

jurisdiction); *Florida v. Thomas*, 532 U.S. 774, 777 (2001)).

Plaintiff argues that claims for intentional infliction of emotional distress are "more

readily available" in an employment setting.  Reply at 9.  There are certainly New Mexico cases

where the courts found that plaintiffs had sufficiently alleged IIED claims.  For example, in

*Baldonado v. El Paso Natural Gas Company*, which Plaintiff cites, the court found that local

firefighters stated a sufficient claim for intentional infliction of emotional distress. 143 N.M. 288

(N.M.,2007).  According to the complaint, the defendant (a gas company) failed to take the steps

necessary to insure the safety of the pipeline at issue, which ruptured near the Pecos River south

of Carlsbad, New Mexico.  At the time it happened, twelve members of an extended family were

camped in the area of the pipeline. The escaping gas ignited, creating a fireball that engulfed the

campsite. All twelve family members, including young children, either were killed during the fire

or died later from severe burns. The survivors were conscious but in obvious physical pain and

mental anguish.  The gas pipeline company allegedly knew the consequences of such failure: it

had been cited for past safety violations, and had experienced at least two previous pipeline

explosions, one of which involved severe burns.  The company also knew that the area around it

was used for camping, and knew or should have known, that the pipeline suffered from the same

problems that resulted in the explosions in other pipelines nearby. Despite that knowledge, and its obligation to coordinate with firefighters, defendant did not share any of this information with the firefighters.

Another case cited by Plaintiff, *Phifer v. Herbert*, also took place in an employment setting. 115 N.M. 135, 140 (Ct.App. 1993), *overruled on other grds. by Spectron Development Laboratory, a Div. of Titan Corp. v. American Hollow Boring Co*., 123 N.M. 170 (N.M.App.1997). The plaintiff in that case alleged that the sales manager and another employee at Silver City Ford in Silver City, New Mexico, had made explicit and implied sexual remarks and improper overtures toward Plaintiff which embarrassed, shamed, and degraded her and caused her mental anguish. The complaint further alleged that because of this treatment, Plaintiff was forced to quit her job.

These cases do not help Plaintiff, either.  In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal*, – U.S., 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

The instant case is easily distinguishable from those New Mexico cases involving IIED claims in an employment setting in that the complaints in those cases alleged facts from which could plausibly sprout an IIED claim.  The facts in the *Baldonado* case easily suggest outrageous behavior on the part of the gas company, and the defendants' conduct as described in the complaint in *Phifer* on its face suggests actions which would support a possible IIED claim on further development.  There is no such possibility here.  The complaint alleges no facts which beg

further scrutiny in order to determine whether an IIED claim is viable.

The joinder of a resident defendant is fraudulent if no cause of action exists. *Smoot v. Chicago Rock Island and Pacific R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967).  Courts will disregard the citizenship of a nondiverse defendant who is fraudulently joined.  For example, in *Burden v. General Dynamics Corp.*, 60 F.3d 213 (5th Cir. 1995), the plaintiff claimed he was outrageously treated because, even though his job performance was excellent, he was reclassified into a position in which he was isolated and given no input into critical management decisions. The Fifth Circuit concluded that defendants proved that the nondiverse defendants were fraudulently joined to defeat diversity, as there was no possibility that the plaintiff could establish a claim for intentional infliction of emotional distress against nondiverse defendants in Texas state court.  As a result, the court affirmed the district court's denial of remand.  Similarly, in *Pensioned v. JE Merit Constructors, Inc.*, 962 F.Supp. 848 (M.D.La.,1996), the plaintiff claimed that the defendants engaged in discriminatory conduct against him on the basis of his age and disability.  The Lousiana federal district court held that plaintiff had fraudulently joined the nondiverse defendant to defeat federal diversity jurisdiction because plaintiff failed to state an intentional tort claim against the employer.  The case was remanded to state court.

Based on the foregoing discussion, the Court finds that Plaintiff has not sufficiently alleged a cause of action brought under IIED against Defendant Schutt, nor do the facts come close to alleging an IIED claim against him.  Without a cause of action against Schutt, the only Defendant in this case is UBS.  Because UBS is a diverse Defendant, removal is proper because diversity jurisdiction exists, and Plaintiff's motion to remand will be denied.

C.      Remand Fees

In light of the Court's determination that removal by Defendants was proper, I need not

address Plaintiff's request for fees under 28 U.S.C. § 1447(c).

**Conclusion**

In sum, I find and conclude that because Plaintiff has not alleged a viable claim of intentional infliction of emotional distress against Defendant Schutt, who is a nondiverse Defendant, that Defendant was fraudulently joined.  On that basis, the Court can disregard the citizenship of Defendant Schutt, and finds that removal to federal court was proper and Plaintiff's motion to remand will be denied.

In addition, the Court denies Plaintiff's request for remand fees under 28 U.S.C. § 1447(c).

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Remand to State Court and Attorneys' Fees and Costs Under 28 U.S.C. § 1447, filed October 21, 2009 **(Doc. 8)** is denied, as to both the request for remand and for attorneys' fees.

_____
UNITED STATES DISTRICT JUDGE